# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DONALD SAMPSON,**

    Plaintiff,

    v.                                                      Case No. 17-CV-1795

**DR. TOKAR,**
**DR. MICHAEL HAGAN, and**
**LIEUTENANT LONDRE,**

    **Defendants.**

## DECISION AND ORDER SCREENING PLAINTIFF'S COMPLAINT

Plaintiff Donald Sampson, who is representing himself, filed a civil rights complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights by allowing his psychological services unit request slip to be read by another inmate and by failing to prevent harm to him. Sampson has also filed a motion seeking leave to proceed without prepayment of the filing fee.

Not all parties have had the opportunity to fully consent to magistrate judge jurisdiction under 28 U.S.C. § 636(c). Nonetheless, the court has jurisdiction to screen the complaint pursuant to the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court.

This decision, therefore, resolves Sampson's motion for leave to proceed without prepayment of the filing fee and screens his complaint.

1. *Motion for Leave to Proceed without Prepayment of the Filing Fee*

The Prison Litigation Reform Act applies to this case because Sampson was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the civil case filing fee, as long as he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once he pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On January 10, 2018, I ordered Sampson to pay an initial partial filing fee of $2.94. (Docket # 6.) Sampson paid the fee on January 29, 2018. Accordingly, I will grant Sampson's motion for leave to proceed without prepayment of the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

2. *Screening of the Complaint*

Federal law requires that I screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, I follow the principles set forth in *Twombly* by, first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was caused by the defendant acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). I am obliged to give the *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### 2.1 The Plaintiff's Allegations

Sampson alleges that on September 17, 2017, he overheard an argument between Officer Negran (not a defendant) and Juan Rodriguez (not a defendant), an inmate who was housed in the cell next to Sampson. He heard Negran stopped at inmate Rodriguez' cell door. He then heard Negran make sexual comments to Rodriguez and saw Negran grab Rodriguez' penis. Sampson alleges that he then took it upon himself to submit a

3

psychological services unit (PSU) request slip later that day regarding the incident. In the PSU slip, Sampson stated:

> [I]nmate Rodriguez and C/O Negran was arguing and C/O Negran turn toward the direction of my cell and grabbed his private parts (his penis) and making comments like "Rodriguez" likes me, that's why he keeps talking to me. "Officer also stated he wants to give me a hug, and that's all inmate Rodriguez, do is suck dick. That made me feel very uncomfortable and unsafe. It gave me a bad imagize [sic] from when I was a little boy and bad things happen to me by my uncle in which he did to me. I still have dreams about the matter. The officer was very nasty and unprofessional to the inmate Rodriguez.

(Docket # 1, ¶ 10.)

On September 19, 2017, Sampson saw Rodriguez returning to his cell and asked him if he was okay and where he had been. Rodriguez responded that he had been to see Dr. Tokar. He stated they discussed, among other things, Sampson's PSU slip. Tokar asked Rodriguez whether he knew Sampson had written a PSU slip about him. When Rodriguez responded "no," Tokar asked Rodriguez whether he wanted to and then then allowed him to read Sampson's PSU slip.

After telling Sampson this, Rodriguez asked Sampson why he had informed Tokar of what happened with the officer. He then told Sampson "Man when I see you, I'm fucking you up for that hoe ass shit." *Id.*, ¶ 14. Rodriguez also contacted his friends, who also taunted and threatened Sampson.

Later that day, Sampson wrote another PSU slip to Tokar asking her why she had shared his "confidential" slip with Rodriguez. *Id.*, ¶ 16. He stated that Rodriguez and his friends were now threatening to harm him and that he felt suicidal.

Sampson also wrote Dr. Hagan, the head of the PSU, about Tokar's actions. Hagan responded that Tokar "did the right thing." *Id.*, ¶ 21.

4

Sampson wrote Security Director Lieutenant Captain Giemoth and the warden (not defendants) as well, but he did not receive a response from either of them. Sampson continued to write Hagan, and also wrote to Lieutenant Londre about the incident. Londre called Sampson to his office and made fun of him.

Sampson states that since the taunting and threats from Rodriguez and his friends began, he has been unable to engage in recreation or eat. He wrote his family informing them that he is "very stressed out, and is ready to take [his] life." *Id.*, ¶ 18.

Sampson seeks compensatory and punitive damages.

2.2    *Analysis*

Sampson appears to be asserting claims of violation of right to privacy and failure to prevent harm. I will address each in turn.

*Right to Privacy*

The Supreme Court has held that a person's constitutional right of privacy "is limited to those rights that are "fundamental" and are "implicit in the concept of ordered liberty." *Paul v. Davis*, 424 U.S. 693, 713 (1976). In that regard, the Supreme Court has recognized a right to informational privacy under the Fourteenth Amendment. *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977). The Seventh Circuit found in *Denius v. Dunlap* that there is a "clearly established 'substantial' right in the confidentiality of medical information that can only be overcome by a sufficiently strong state interest." 209 F.3d 944, 956 (7th Cir. 2000).

Sampson seems to be asserting that his PSU request slip was his private medical information and that Tokar violated his right to privacy regarding that information when she allowed Rodriguez to read the slip. Whether such a request

slip that assumedly passes through the hands of various prison officials before it gets to medical staff can be classified as private medical information is unclear. Further, Sampson's allegations muddle its privacy classification. Specifically, it is not clear whether he wrote the slip requesting to see PSU himself or for PSU to see Rodriguez. However, because this information is unknown, I cannot find the claim to be invalid. Thus, I will allow Sampson to proceed on his claim of a violation of his Fourteenth Amendment right to privacy against Tokar.

Sampson's assertion of a right to privacy violation against Hagan and Londre, however, is insufficient. A defendant cannot generally be held liable under section 1983 simply because he had knowledge of another's past misconduct. *Ashcroft*, 555 U.S. at 677. A defendant must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir.2012) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir.1988)). Thus, Sampson may not proceed with his claim of a Fourteenth Amendment right to privacy violation against Hagan and Londre.

*Failure to Prevent Harm*

The Eighth Amendment guarantees that prison officials " 'take reasonable measures to guarantee the safety of the inmates.' " *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984). To state an Eighth Amendment failure to prevent harm claim, a prisoner must allege that (1) he faced a "substantial risk of serious harm" and (2) the prison officials identified acted with "deliberate indifference" to that risk. *Farmer*, 511 U.S. at 834; *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005).

With regard to the first prong, "a substantial risk of serious harm is one in which the risk is 'so great' that it is 'almost certain to materialize if nothing is done. '[T]he conditions presenting the risk must be 'sure or very likely to cause ... needless suffering,' and give rise to 'sufficiently imminent dangers.' " *See Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (citations omitted). Sampson alleges that on September 19, 2017, Rodriguez and his friends began their threats to harm him because he had informed Tokar of the incident that occurred on September 17 between Rodriguez and an officer. However, Sampson filed his complaint three months after the alleged threats began, and in his complaint he does not allege Rodriguez or his friends have acted, attempted to act, or will soon act upon those threats. Thus Sampson has not sufficiently alleged that he is "very likely" to be seriously harmed or that he is in "imminent danger." So he may not proceed on a claim against the defendants for failure to prevent harm regarding the alleged threats asserted against him.

The Seventh Circuit, however, has reasoned that suicide, attempted suicide and other acts of self-harm clearly pose a "serious" risk to an inmate's health and safety. *See Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006) (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir.2001)). Indeed, "prison officials have an obligation to intervene when they know a prisoner suffers from self-destructive tendencies." *Rice ex rel. Rice v. Correctional Medical Servs.*, 675 F.3d 650, 665 (7th Cir.2012). Sampson asserts that he is suicidal and that he informed Tokar of this. He asked her to respond as soon as possible, but he does not allege that she did. Rather,

he states generally that nothing was done about the matter. At this stage, I find that he has sufficiently alleged a claim of failure to prevent harm claim against Tokar.

**THEREFORE, IT IS ORDERED** that Sampson's motion to proceed without prepayment of the filing fee (Docket # 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that Dr. Michael Hagan and Lieutenant Londre are **DISMISSED** as defendants.

**IT IS ALSO ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of Sampson's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the state defendant Dr. Tokar.

**IT IS ALSO ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, defendant Dr. Tokar shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of Sampson shall collect from his institution trust account the $347.06 balance of the filing fee by collecting monthly payments from Sampson's prison trust account in an amount equal to 20% of the preceding month's income credited to his trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If Sampson transfers to another county, state, or federal institution, the transferring institution shall forward a copy of this order, along with Sampson's remaining balance, to the receiving institution.

**IT IS ALSO ORDERED** that a copy of this order be sent to the warden of the institution where Sampson is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, Sampson shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court.[1] If Sampson is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

I advise Sampson that, if he fails to file documents or take other required actions by the deadlines I have set, I may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Dated at Milwaukee, Wisconsin this 19th day of April, 2018.

BY THE COURT:

*s/Nancy Joseph*_____
NANCY JOSEPH
United States Magistrate Judge